STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| HERNAN OROZCO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KATHRYN BARGER,<br><br><br><br><br>　　　　　Defendants. | 2:23-CV-04047-FLA(JCx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT**<br><br>Judge Fernando L. Aenlle-Rocha |

　　Based on the following memorandum and declaration, plaintiff opposes and requests the striking of defendants' *ex parte* application for an extension of time to respond to the complaint

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### INTRODUCTION.

Late on Friday afternoon, June 23, defendants filed an *ex parte* application for an extension of time to respond to the complaint. The serial filings that comprise the application were filed via the court's CM/ECF filing system, at 3:43 p.m., 3:48 p.m., and 4:00 p.m. *See* time stamps on the application, proof of service, and certificate of interested parties.

The filing are deficient, because there is no legal memorandum citing authorities in support of it, in violation of L.R.s 7-5 and 7-19, no order was submitted with it,[1] in violation of L.R. 7-20, and it is in violation of this court's Civility and Professionalism Guidelines, parts 9.c. (requiring a "*bona fide* emergency*"* for filing an *ex parte* application) and 3.c. ("We will not serve papers . . . such as late on a Friday afternoon"). *See* Judge Aenlle-Rocha's law and motion rules: "The court expects counsel to review and adhere scrupulously to the Central District's Civility and Professionalism Guidelines." And, there is no brief format certification, in violation of L.R. 11-6.2.

For each and all of these reasons, the application should be stricken and/or denied.

### ARGUMENT.

All matters in federal district courts begin with Rule 1, Fed. R. Civ. P., that mandates the "speedy"[2] disposition of all matters. Here, a 60-day extension of time would run afoul of the "speedy" requirement.

---

[1] There is a false representation on the face-page of the application, that a "Proposed Order [Is] Filed Concurrently Herewith." App. at 1:17-18.

[2] Here, "speedy" has an underlying, factual predicate, because plaintiff is 73 years old and his counsel is almost 79 years old, and each of them would like to be around for the conclusion of this action. Declaration of Stephen Yagman ("Yagman Decl."), attached hereto. Time is of the essence. A 60-day extension of

2

Defendants state that they were served with the summons and complaint on June 12, 2023, App. at 3:23-24, and that their response is due July 3. *Id.* at 24. As of the date the application was filed, defendants had 10 days within which to respond to the complaint, so that there is no "emergency" to warrant *ex parte* relief. *See infra.*

There is no "brief but complete memorandum in support [of the application] and the points and **authorities** upon which the moving party will rely," in violation of L.R. 7-5(a) (emphasis added), and on this ground the application should be denied.

There is no order submitted, in violation of L.R. 7-20, which requires that "[a] separate proposed order shall be lodged with any . . . application requiring an order of the Court, pursuant to L.R. 52-4.1," and on this basis the application should be denied.

Most importantly, pursuant to the law governing *ex parte* applications, there is no predicate showing to warrant in-the-first-instance, *ex parte* relief.

## THE LAW ON *EX PARTE* APPLICATIONS HAS NOT BEEN FOLLOWED.

Defendants cite no law at all in their legal memorandum. The reason for this may be that the application does not comply with the applicable law.

Often, as here, *ex parte* applications are inappropriately made.

//
//

---

time is too much time; plaintiff would agree to a 14-day extension of time, until July 17, 2023. Defendants are not entitled to any extension of time to do pre-Rule 26(f) meeting discovery, as they seem to want to do, but plaintiff has agreed to a prompt Rule 26(f) conference with defense counsel, to facilitate discovery. Yagman Decl., Exhs. 1 & 2 thereto. Defendants would suffer no prejudice by having to answer timely, because they could do so and then make a motion for judgment on the pleadings, were that warranted.

3

> Ex parte applications have reached epidemic proportions in the Central District [of California]. . . . Given the tremendous number of such applications, over the past several years, it is appropriate to set forth, in some detail, the reasons why they are nearly always improper.
>
> . . . .
>
> [M]ere technical compliance with the filing requirements of the Local Rules is not enough to justify an ex parte application.
>
> . . . .
>
> [E]x parte proceedings pose a threat to the adversary system. By allowing both sides to have their say, the adversary system promotes accuracy, fairness, and consistency -- the hallmarks of our system of justice.
>
> . . . .
>
> [E]x parte applications contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court. . . . Ex parte applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason. . . . [T]hey put the applicant "ahead of the pack," without cause or justification. Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to "cut in line" ahead of those litigants awaiting determination of their properly noticed and timely filed motions.
>
> . . . .
>
> [T]he fact [is that] our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.
>
> . . . .
>
> Given the value our system places on the adversarial process, it is not surprising that the opportunities for legitimate ex parte applications are extremely

> limited. Essentially, these opportunities are the following: First, where there is some genuine urgency such that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition." [Citation omitted.] Second, ex parte proceedings are appropriate where there is a danger that notice to an opposing party will result in that party's flight, destruction of evidence [citation omitted], . . . or secretion [*sic*] of assets [citation omitted] . . . . Third, what I have termed "hybrid ex parte applications" (i.e., where the other side actually is served) may be necessary when a party seeks a routine order (e.g., to file an overlong brief or to shorten the time within which a motion may be brought).

*In re Intermagnetics America, Inc. v. China Int'l Trust and Investment Corp.*, 101 B.R. 191, 191-93 (C.D. Cal. 1989) (Pam Rymer, Circuit Judge, sitting by designation).

Similar principles are set forth in *Mission Power Engineering Company v. Continental Casualty Company*, 883 F.Supp. 488 (C.D. Cal. 1995).

> Ex parte motions are rarely justified.
> . . . .
> [E]x parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone [not done in the instant matter] when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

> These hybrid ex parte motions also bring out the worst instincts of the lawyers. The moving party's lawyer perceives it to be the unethical conduct of the opposing counsel that made it necessary to file its motion in the first place.
>
> . . . .
>
> The opposing lawyer who has to abandon his other clients to deal urgently with the motion perceives the episode as just another indicator of the maleficence of the adversary.
>
> All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case of each side. The opposing party can rarely make its best presentation on such short notice. Its lawyers can sometimes be made to appear inept. Anything that tends to give unfair advantage to one side may, however, cause the court to compensate by giving the benefit of the doubt to the other side. This may result, ironically, in the moving party actually suffering an undeserved disadvantage due to the perception that it acted unfairly.
>
> In papers prepared on short notice, however, the lawyers too often simply make allegations that have no supporting evidence to back them up. [Here, no legal authorities were presented by defendants.] Even more pernicious is another tendency: the advocates draw conclusions that appear to be supported by voluminous exhibits, but are not borne out when the evidence is reviewed with more deliberation and more careful rebuttal than is possible in hasty hearings on ex parte motions.
>
> A judge will rarely be willing to draw the conclusion that one member of the bar of this court is worthy of belief and another is not when there is little extrinsic evidence of their veracity. . . . Lawyers should thus be aware of the risks of making unsupported statements,

> drawing unjustifiable conclusions, or even using words with high emotional connotations about an adversary. Such conduct says more about the lawyer making the statements than about the adversary. Consequently, the tainting of the court's view is more likely to be detrimental to the accuser than to the accused.
>
> [L]awyers need to be aware of how sensitive the courts are to the unfairness that results from the flood of unwarranted ex parte motions. . . . The rules contemplate that regular noticed motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable.
>
> . . . .
>
> Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting "Fire!" There had better be a fire.
>
> . . . .
>
> [T]he evidence [supporting an ex parte application] must show that the moving party's cause will be ***irreparably prejudiced*** if the underlying motion is heard according to regular noticed motion procedures. . . . [I]t must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect.

*Id.* at 490-93 (emphasis added). Such here is the case.

Here, however, all of the factors warrant ***against*** the instant *ex parte* application.

In *Dang v. Cross*, 2002 WL 826604 (C.D. Cal. 2002), former Judge Gary Allen Fees of this court cited *In re Intermagnetics* and *Mission Power Engineering* with approval, and wryly noted that "[t]he passage of time [since *Intermagnetics* in

7

1989 and since *Mission Power Engineering* in 1995] has demonstrated that some things have not improved[,]" and denied an *ex parte* application and held that,

> [t]he Local Rules contemplate the use of an ex parte application ***accompanied by a separate proposed motion*** for the ultimate relief the party is seeking. ***Properly designed ex parte motion papers thus contain two distinct motions or parts***. The first part should address only why the regular noticed motion procedures must be bypassed. The second part should consist of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a "proposed" motion and they show no hearing date.) These are separate, distinct elements for presenting an ex parte motion and should never be combined. 883 F. Supp. 491. [Both] required elements [must be] presented [or an ex parte] application [will be] DENIED . . . [to await] an application that complies with the Local Rules.

(Emphasis added.)

Here, these principles apply, yet they have not been followed by defense counsel, who obviously knows them, but who, for unknown reasons, has decided to ignore them and not make any mention of them.

Former Chief Judge George H. King of this court reaffirmed, quoted from, and applied the principles of *In re Intermagnetics America, Inc., supra*, and *Mission Power Eng'g Co., supra*, both applied by Judge Feess, to deny an inappropriate *ex parte* application in *Eichenlaub v. Baca*, 2007 WL 809676 1(C.D. Cal. 2007), and held that: "[t]here is thus no reason why [Mr. Galipo's] application . . . should be heard ex parte[] [because w]hatever the circumstances that allegedly give rise to [his] request . . ., they are not likely to change in the time necessary to notice a motion."). Here, the same is true because there will be no harm to defendants if they must timely respond to the complaint. *See supra*, at 3:27-28.

For each and all of these reasons, the instant application should be stricken or denied. Defense counsel will have ample time to make her motion to dismiss on or before July 3, 2023. Yagman Decl.

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: *Stephen Yagman*
STEPHEN YAGMAN

## DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I incorporate herein by this reference the facts set forth in the preceding memorandum, that I know to be true from my personal knowledge, in order to render them admissible in evidence.

3. Attached hereto as Exhs. 1 & 2 are defense counsel's June 20 letter, that was received by my office on June 21 and first read by me on June 22, and my June 23 response to that letter.

4. It would appear from defense counsel's letter and all of the authorities cited therein, that she is well-prepared to make a motion to dismiss and intends to do so, so that she has no basis for the 60-day extension of time she requests. She admits that she has been dealing with and researching this matter since 2022 and has formulated a strategy of moving to dismiss and has done the relevant research for that, based on collateral estoppel, and she does not need any more time within which to make that motion.

5. The instant application is particularly disruptive for me because I must begin jury selection in a complex case on Monday morning, June 26, I have been preparing for that trial intensively since last Sunday, June 18, have been spending all of my time over the June 24-25 weekend preparing for that trial, and the opposition to the application is due by 4:00 p.m. today, June 26.

_____
STEPHEN YAGMAN  June 26, 2023

# CERTIFICATE OF COMPLIANCE
(L.R. 11-6.2)

The undersigned, counsel of record for plaintiff(s) certifies that this brief contains 1,983 words, which complies with the word limit of L.R. 11-6.1.

YAGMAN + REICHMANN, LLP

By: /s/ Stephen Yagman
STEPHEN YAGMAN

# EXHIBIT 1



**Leah A. Plaskin Lorenz, Esq.**
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131 Ext. 2264
(619) 238-8707 Fax
llorenz@klinedinstlaw.com

June 20, 2023

**VIA OVERNIGHT DELIVERY**

JUN 21 2023

Stephen Yagman, Esq.
Yagman + Reichmann, LLP
333 Washington Boulevard
Marina Del Rey, CA 90292-5152

    Re:    *Orozco v. Barger, et al.*
           Our File No.: 1734-1030

Dear Mr. Yagman:

    This office represents the Los Angeles County Bar Association and Cyn Yamashiro (hereinafter, "the LACBA Defendants") with respect to the Complaint that Mr. Orozco recently (re)filed. This correspondence is our effort to begin the meet and confer process regarding an extension to respond to the Complaint, obtaining the underlying court file, and the motion to dismiss, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), that we plan on filing.

    As we noted with respect to the 2022 Complaint that Mr. Orozco filed, communication with your office is unusually difficult because you do not accept electronic communications. Once again, in an effort to make communications in this case as efficient as possible, we request an email address that we can use so that we can promptly and efficiently communicate with your office. (Central District of California, Local Rule 5-4.8.2 (requiring an email address that is adequate for all documents that will be sent in the case).)

**Request for Extension to Respond to the Complaint and Stipulation to Access the Court File**

    As you know, Mr. Orozco's Complaint concerns his allegations that there were delays in getting his SVP case to trial, that he requested that his case be brought to trial, and that, due to Defendants' alleged wrongdoings in this respect, Mr. Orozco's due process rights were violated. Given the nature of these allegations, the LACBA Defendants need access to Mr. Orozco's file for the relevant SVP case to respond to the Complaint: *People of the State of California v. Hernan Orozco* (Los Angeles Superior Court Case No. ZM011442).

    As we informed you with respect to the 2022 Complaint, we began the process of seeking access to the underlying court file, *People of the State of California v. Hernan Orozco* (Los Angeles Superior Court Case No. ZM011442) (and then stopped that process once Mr. Orozco dismissed the 2022 Complaint). Thus, we, again, request that Mr. Orozco provide us with his

Stephen Yagman, Esq.
June 20, 2023
Page 2

consent and authorization to obtain the file, as we expect that he, too, will need to use documents from the file to support his claims. To that end, an Authorization and Consent for us to access the file is enclosed for Mr. Orozco's signature. We can then submit that with our application to the Mental Health Court in Hollywood. We will provide a copy of the application to you and notice of any hearing date we obtain by which the court will issue an order with respect to our request. You can email the signed Authorization to llorenz@klinedinstlaw.com. Also, we would offer to file any documents from the SVP file that are used in the Section 1983 case under seal and to coordinate with you on that process.

If Mr. Orozco does not sign the consent, we will proceed with our application and the hearing with respect to the same (for which we will provide you with notice as Mr. Orozco's counsel).

Because we now need to restart the process of seeking the underlying court file, **we also request that Mr. Orozco stipulate to an extension of 60 days for the LACBA Defendants to respond to the Complaint** so that we have sufficient time to obtain and review the file and respond to the Complaint. A Stipulation is enclosed for your review and signature.

If you could return the Authorization and Stipulation to us via email (llorenz@klinedinstlaw.com) by noon on Friday, June 23, 2023 we would appreciate it. If we do not receive a response from you by that time regarding the extension, we will file an ex parte request with the court by the close of business on Friday.

**Grounds for Motion to Dismiss**

With respect to the Motion to Dismiss that we plan on filing, the grounds are the same as those we met and conferred with you about regarding the 2022 Complaint. The primary basis for the LACBA Defendants' anticipated motion to dismiss is that Mr. Orozco's claims are barred, including by collateral estoppel, by prior orders in the SVP case (*People of the State of California v. Orozco*, Los Angeles Superior Court Case No. ZM011442). Mr. Orozco alleges that the LACBA Defendants are liable for violating his rights due to the failure to timely bring his SVP case to trial. There, however, has already been a determination in the SVP case that there was no violation of Mr. Orozco's rights due to the delay. Mr. Orozco filed a petition for habeas corpus in December 2019, seeking to dismiss his case, in part, because of the delays in getting the case to trial. The matter was fully briefed, argued, and decided, and Judge Daniel Lowenthal denied the motion to dismiss, finding that Mr. Orozco requested or agreed to the continuances in the case, there was no breakdown in the representation of Mr. Orozco, Mr. Orozco suffered from serious medical issues over the years supporting the continuances, and that the delay in Mr. Orozco's case was not violative of due process.

Mr. Orozco is collaterally estopped from arguing now that the LACBA Defendants' actions – whatever they may have been as they are unclear – support a section 1983 action or in any way violated Mr. Orozco's rights. (See e.g. *Allen v. McCurry*, 449 U.S. 90, 105 (1980); *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 760-761 (9th Cir.

Stephen Yagman, Esq.
June 20, 2023
Page 3

2014); *Younan v. Caruso* (1996) 51 Cal.App.4th 401; *Silverton v. Department of the Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981); *Gonzales v. California Dep't. of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014).)

While the SVP petition was ultimately found to not be true and Mr. Orozco was ordered discharged, Judge Lowenthal made that decision after a trial on the merits. Judge Lowenthal's decision was based on the fact that he could not find, at the time of the trial, beyond a reasonable doubt, that Mr. Orozco would engage in sexually violent predatory conduct if released. Thus, Judge Lowenthal found the petition not to be true. The decision was not based in any way on delay in getting the case to trial or a violation of due process rights.

Given these facts, Mr. Orozco will similarly be unable to establish that the LACBA Defendants caused a violation of due process. The relevant SVP proceeding – regarding whether there was improper delay – was decided against Mr. Orozco. (*Arnold v. International Business Machines Corp.*, 670 F.2d 1350, 1355 (9th Cir. 1981) (causation is an implicit requirement of a section 1983 claim); see also *Jones v. Whisenand* (2017) 8 Cal.App.5th 543 (discussing a need for favorable termination of the underlying SVP proceedings).) Here, the LACBA Defendants did not cause the claimed injury. Nor are there any allegations of any actions by any LACBA defendant that could have caused Mr. Orozco's claimed harm.

Mr. Orozco's claims against the LACBA Defendants also fail because the factual allegations against them are insufficient. There are no allegations establishing that or how the LACBA Defendants acted under the color of state law and, as discussed above, that their actions caused Mr. Orozco's alleged deprivation. (*Monell v. Dept. of Soc. Servc.*, 436 U.S. 658; *Rizzo v. Goode*, 423 U.S. 362 (1976).) Mr. Orozco must demonstrate that each person personally participated in the alleged deprivation of his rights. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).) Allegations regarding causation must be individualized and must focus on the duties and responsibilities of the defendant whose acts or omissions are alleged to have caused the constitutional deprivation. (*Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).)

In sum, because there has already been a finding that Mr. Orozco's due process rights were not violated by the delay in getting his case to trial, and his ultimate discharge was only based on the merits following the SVP trial, Mr. Orozco's claims against the LACBA Defendants cannot be cured by amendment and should be dismissed with prejudice. With that being said, we are happy to consider any authority you feel is relevant or contrary to the above-discussed deficiencies, and **we are available to further meet and confer telephonically, per Local Rule 7-3, on (1) Wednesday, June 28, 2023, anytime between 2:00 p.m. – 5:00 p.m.; (2) Thursday, June 29, 2023 at 9:00 a.m., or anytime between 2:00 p.m. – 5:00 p.m., or (3) Friday, June 30, 2023 in the morning of afternoon**. Please have someone from your office call or email my assistant, Karla Hamilton (619-400-8000; khamilton@klinedinstlaw.com), to confirm which date and time works best for you. (We can then use our conference call-in information at that time, which is 866-384-1723, passcode 628415.)

Stephen Yagman, Esq.
June 20, 2023
Page 4

Thank you, and we look forward to hearing from your office.

Very truly yours,

KLINEDINST PC

*[signature]*

LEAH PLASKIN LORENZ

LAP
Enclosure
cc:   Heather L. Rosing, Esq.

# EXHIBIT 2

LAW OFFICES

# YAGMAN + REICHMANN, LLP

333 WASHINGTON BOULEVARD
VENICE BEACH, CALIFORNIA 90292-5152
(310) 452-3200

June 23, 2023

Leah Lorenz
501 W. Broadway, Ste. 600
San Diego, CA 92101

Re: *Orozco v. Barger*

Dear Ms. Lorenz:

    This letter is written in response to your June 20 letter. The most efficient way possible that will constitute prompt and efficient communication, that you state you wish, is very simple: just telephone me.

    As to the L.R. 7-3 conference you request, I am unavailable to participate at any of the times you propose, because I am scheduled to begin a trial on June 26. I usually return from trials around 6:30 p.m., and if you would propose a time to meet and confer beginning at 7:00 p.m., on any of the dates you suggest, June 28, June 29, and June 30, between the hours of 7:00 p.m. and 9:00 p.m., I would be available to take your call, provided that I receive 24 hours' telephonic notice of the date and time you would call.

    The other requests in your letter are denied. As to your wish to engage in discovery, I would be available to participate in a Rule 26(f)(1) conference, that is a condition precedent to the discovery you seek, as part of our L.R. 7-3 conference, again, provided I receive 24 hours' telephonic notice of that.

Very truly yours,

*[signature: Stephen Yagman]*
STEPHEN YAGMAN